# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA MEJIA-RAIGOZA, ) | 1:09cv0441 DLB |
| ) | |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S |
| ) | SOCIAL SECURITY COMPLAINT |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## BACKGROUND

Plaintiff Maria Mejia-Raigoza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on January 23, 2004, alleging disability since November 22, 2002, due bilateral carpal tunnel syndrome ("CTS").  AR 163-166, 177-186.  After her

---

[1] This action was reassigned to the United States Magistrate Judge for all purposes on May 4, 2009.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 87-90, 94-98, 99. ALJ David M. Ganly held a hearing on July 6, 2005, and issued an order denying benefits on August 25, 2005. AR 614-636, 62-74. On March 8, 2006, the Appeals Council vacated the ALJ's decision and remanded the action to another ALJ for further proceedings. AR 125-129.

ALJ Michael Haubner held a second hearing on April 24, 2007. AR 637-676. He denied benefits on May 17, 2007. AR 46-55. The Appeals Council denied review on December 8, 2008. AR 6-9.

Hearing Testimony

ALJ Haubner held a hearing in Bakersfield, California, on April 24, 2007. Plaintiff appeared with her attorney, Tim Carpenter. Vocational expert ("VE") Cheryl Chandler also appeared and testified. AR 637.

Plaintiff testified that she was born in 1967 and completed the ninth grade. She took community college courses to become certified as a word processor. AR 646-647. Plaintiff worked as an accounting assistant from 1995 through 2002 and as a medical assistant 1988 through 1993. AR 648-649. She last worked on November 21, 2002. AR 649.

Plaintiff lives with her children and her brother. AR 650. She has a driver's license and drives about twice a day to drop off and pick up her children from school. AR 651-652. She has difficulty grasping the steering wheel, however. AR 673. Plaintiff is able to take care of her personal needs and perform simple meal preparation. AR 652-653. She does not do dishes more than once a week and does not do laundry or household chores. AR 653-654.

Plaintiff estimated that she watched about four hours of television a day and lays down for about six hours. AR 656-657. She has pain in the back of her neck, shoulders, elbows and mid- back. AR 657. She also had pain in her joints, as well as asthma. AR 658.

Plaintiff thought that she could lift about 10 pounds, sit for 20 minutes, walk for 10 minutes and stand for 30 minutes. She also has difficulties concentrating and paying attention, and estimated that she could focus for about five minutes. AR 659-660. Plaintiff's medication

causes dizziness and joint pain, though changing the dosage and/or medication helps alleviate the side effects.  AR 660.

When questioned by her attorney, Plaintiff testified that her wrist pain averages a seven on a ten-point scale, her neck and shoulder pain average about an eight, and her back pain averages about a nine.  She believed that her main impairment was her hands.  AR 671-672. Plaintiff testified that it is painful to bend, kneel and crawl.  She wakes up often at night because of pain and numbness.  AR 674.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person could stand and walk for about eight hours, sit for about eight hours, and lift and carry 100 pounds occasionally, 50 pounds frequently.  The VE testified that this person could perform Plaintiff's past work as an accountant assistant and a medical assistant.  AR 663-664.

For the second hypothetical, the ALJ asked the VE to assume that this person needed to avoid very heavy lifting and repetitive work at or above shoulder level.  The VE testified that this person could perform Plaintiff's past relevant work.  AR 664.  This person could also perform unskilled sedentary, light and medium work, though there would be some erosion based on the repetitive work limitation.  For example, this person could perform the medium position of dining room attendant, entertainment attendant, golf range attendant and cashier.  AR 665-666.

For the third hypothetical, the ALJ asked the VE to assume that this person could not perform very heavy lifting or very heavy pushing and pulling.  This person could not perform repetitive gripping, grasping or fingering with both hands.  The person was also precluded from performing repetitive work above shoulder level with both hands.  The VE testified that this person could not perform Plaintiff's past relevant work and could only perform about one percent of light and sedentary positions.  The VE identified the position of surveillance monitor, of which were about 1,100 positions in California.  AR 666.

For the fourth hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk about six hours and sit for about six hours.  This person has a limited ability to push and pull with the upper extremities and

needed to avoid frequent gripping, grasping or twisting with either hand.  This person also needed to avoid frequent pinching, plucking or keyboarding with either hand.  The VE testified that this person could perform Plaintiff's past relevant work, as well as many other light jobs. AR 667-668.

For the fifth hypothetical, the ALJ asked the VE to assume a person who could lift and carry 10 pounds occasionally, 10 pounds frequently, and who needed to avoid constant pushing and pulling.  This person could occasionally balance and crawl, but needed to avoid ladders, ropes and scaffolds.  This person also needed to avoid constant gripping and grasping with both hands, constant flexion of the wrists and elbows, concentrated exposure to fumes, odors, dusts and gases, and exposure to vibration.  The VE testified that this person could perform Plaintiff's past relevant work.  Alternatively, this person could perform many other light jobs.  AR 669-670.

For the sixth hypothetical, the ALJ asked the VE to assume that this person could not lift or carry more than five pounds, could not perform repetitive movements with either upper extremity, and could not perform forward, backward or lateral overhead reaching, pushing or pulling.  The VE testified that this person could not perform Plaintiff's past work and could not perform any other work.  AR 670.

For the seventh hypothetical, the ALJ asked the VE to assume that this person could lift and carry 10 pounds, sit for 20 minutes at a time, stand for 30 minutes at a time and walk for 10 minutes at a time.  This person could concentrate in five minute increments and needed to elevate their feet for six hours out of eight.  The VE testified that this person could not perform any work.  AR 670-671.

Medical Record[3]

On May 15, 2003, Plaintiff underwent a right carpal tunnel release.  AR 290-291.

On August 27, 2003, Plaintiff underwent an electromyogram ("EMG") and nerve conduction studies of her upper extremities.  The EMG was normal, though the nerve conduction studies showed severe right CTS.  AR 367.

---

[3] Plaintiff's sole issue is a legal issue related to the examinations and opinions of Steven Brourman, M.D., and therefore only pertinent portions of the medical record will be summarized.

Also on August 27, 2003, Plaintiff saw Steven Brourman, M.D., for an Agreed Medical Examination.  Plaintiff complained of radiating pain and swelling in her wrists and hands.  On examination, Plaintiff had diminished light touch in the right and left ulnar nerve distributions.  She was also tender along the lateral epicondyle of both elbows.  Dr. Brourman diagnosed status-post carpal tunnel release without improvement, electrical evidence of severe persistent right CTS, and bilateral lateral epicondylitis of the elbows.  Her condition was not permanent and stationary and she was considered temporarily totally disabled.  Dr. Brourman recommended further surgery.  AR 378-384.

On March 5, 2004, State Agency physician F. Kalmar, M.D., completed a Physical Residual Functional Capacity Assessment.  Dr. Kalmar opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about six hours and sit for about six hours.  Plaintiff could not perform constant pushing or pulling with her upper extremities and she could not climb ladders, ropes or scaffolds.  Plaintiff could not perform constant gripping, grasping, twisting, pinching, plucking or keyboarding with either hand.  AR 325-332.

On June 24, 2004, Plaintiff underwent a right carpal tunnel release.  AR 544.

Nerve conduction studies and an EMG performed on November 23, 2004, were normal.  AR 401-405.

Plaintiff returned to Dr. Brourman on January 24, 2005.  On examination, there was tenderness over the lateral epicondyles of her elbow.  Based on his examination and his review of Plaintiff's recent treatment and diagnostic studies, Dr. Brourman diagnosed status post right carpal tunnel release without improvement, electrical evidence of severe persistent right CTS, and bilateral lateral epicondylitis of the elbows.  As for Plaintiff's right hand, she needed to avoid heavy lifting, repetitive gripping, grasping, pushing, pulling, squeezing, twisting, torquing, fingering or fine manipulative tasks.  She also needed to avoid very heavy lifting because of her elbow impairment.  AR 543-548.

Plaintiff saw V. Prabhu Dhalla, M.D., on April 18, 2005.  Plaintiff complained of intermittent pain in her wrists, elbows and shoulders.  The pain is alleviated with Motrin and/or rest.  On examination, range of motion in her shoulders was full, though she had tenderness over

the acromioclavicular joint and anterior acromial process in both shoulders.  Range of motion in the fingers and elbows was full.  Plaintiff had tenderness over the lateral epicondyle in both elbows and the lateral aspect of the proximal forearm on both sides.  Plaintiff had decreased sensation in the thumb and index fingers of both hands.  Tinel sign and Phalen test on both sides produced complaints in the little, ring and middle fingers.  Tinel sign, elbow flexion and compression tests for ulnar nerve entrapment at the elbow were positive on both sides.  AR 387-390.

Dr. Dhalla diagnosed status post bilateral carpal tunnel release, right wrist times two, CTS in the left wrist, CTS in both elbows, lateral epicondylitis in both elbows and tendinitis in both shoulders.  He noted that Plaintiff had not elected to undergo further surgery and her condition could be considered permanent and stationary.  AR 390.  She could not perform heavy lifting or very heavy pushing and pulling.  She could not perform repetitive gripping, grasping or fingering with either hand.  Plaintiff could not perform repetitive work above shoulder level with both hands.  He opined that Plaintiff was a qualified injured worker for vocational rehabilitation. Plaintiff would need access to further medical treatment, including the use of analgesic and anti-inflammatory medications.  If her complaints increased, she may require repeat electrodiagnostic studies, surgical treatment or cortisone injections.  AR 392.

On December 9, 2005, Plaintiff saw Mark Greenspan, M.D., for evaluation and treatment pursuant to the related workers' compensation award.[4]   On examination, she had pain in both shoulders with pressure on the acromioclavicular joint.  Finkelstein test and Phalen's sign was positive in the left and right wrists.  Plaintiff had pain with bilateral dorsiflexion and supination. The lateral epicondyles were also painful.  AR 496-505.

Based on his examination findings and review of records, Dr. Greenspan diagnosed a sprain in both shoulders, bilateral CTS, status post right carpal tunnel release, times two, and bilateral lateral epicondylitis.  AR 510.

---

[4] Plaintiff was awarded permanent disability of 32 percent with a finding for future medical care.

1    Plaintiff returned to Dr. Brourman on April 24, 2006. Both shoulders showed signs of

2  impingement. He diagnosed status post re-do right carpal tunnel release, bilateral shoulder

3  impingement syndrome, and bilateral lateral epicondylitis of the elbows. He ordered additional

4  electrodiagnostic testing and an MRI. AR 537-541.

5    On June 5, 2006, Plaintiff saw Norman Linder, M.D., for and nerve conduction studies.

6  The EMG was normal, though the nerve conduction studies suggested moderate right CTS, mild

7  left CTS and right dorsal ulnar cutaneous sensory neuropathy. AR 519.

8    An MRI of Plaintiff's shoulders taken on June 5, 2006, were normal. AR 535.

9    Plaintiff saw Dr. Brourman on June 28, 2006. On examination, range of motion in both

10  shoulders, elbows and wrists was full. Impingement signs in both shoulders were positive. He

11  diagnosed status post re-do right carpal tunnel release, bilateral shoulder impingement syndrome,

12  and bilateral lateral epicondylitis of the elbows. He opined that Plaintiff's shoulders were

13  permanent and stationary based on mild impingement syndrome. Dr. Brourman believed that

14  Plaintiff had reached a maximum medical improvement. Dr. Brourman opined that Plaintiff

15  "should avoid very heavy lifting and repetitive work at or above the shoulder level." If Plaintiff's

16  employer could not offer appropriate modifications, she would be considered a qualified injured

17  worker and a candidate for vocational rehabilitation. AR 527-534.

18    Plaintiff returned to Dr. Greenspan on July 21, 2006. He reviewed Plaintiff's recent

19  diagnostic studies and diagnosed a sprain in both shoulders, possible supraspinatus tendinosis in

20  the right shoulder, bilateral CTS, status post right carpal tunnel release, times two, recurrent right

21  CTS, bilateral lateral epicondylitis and mild bilateral cubital tunnel syndrome. He noted that the

22  findings of the nerve conduction studies are consistent with her clinical presentation. AR 550-

23  553.

24    On December 14, 2006, Plaintiff saw Sarupinder Bhangoo, M.D., for a consultive

25  examination. On examination, Plaintiff was able to support herself with both arms while getting

26  onto the examination table. She did not seem to be in pain and was able to manipulate with her

27  fingers without difficulty. Grip strength was 5/5, with no atrophy of the hand muscles. Motor

28  strength was 5/5, with normal bulk and tone. Plaintiff complained of decreased sensation on

7

both hands at the fourth and fifth digits and the ulnar side of the arms up to the wrists.  AR 562-565.

Dr. Bhangoo diagnosed status post CTS bilaterally.  Dr. Bhangoo noted that Plaintiff's sensory loss was on the ulnar side, rather than on the usual median nerve side.  He also noted that Plaintiff is able to perform basic personal care, do household work, and drive.  These factors, combined with the fact that Plaintiff could support herself with her arms and wrists without a problem, suggest that Plaintiff's condition has significantly reversed and improved in spite of her claims of pain.  Plaintiff could therefore stand and walk eight hours in an eight hour day, sit eight hours in an eight hour day, and lift and carry 100 pounds occasionally, 50 pounds frequently.  In light of Plaintiff's surgery, complete resolution of nerve conduction problems as documented by the nerve conduction studies and her ability to lead a normal life, Plaintiff's maximal functional capacity was rated as heavy, with no limitations.  AR 565-566.  In an attached form, Dr. Bhangoo determined that Plaintiff had no lifting, carrying, standing, walking or sitting restrictions.  She also had no pushing, pulling or manipulative restrictions, and could frequently climb, balance, kneel, crouch, crawl and stoop.  AR 567-570, 579.[5]

Plaintiff returned to Dr. Greenspan on February 2, 2007.  Plaintiff reported that she was frustrated with the continuing pain and wanted to proceed with surgical correction.  Dr. Greenspan requested authorization for staged bilateral carpal tunnel releases.  AR 580-582.

An MRI of Plaintiff's cervical spine performed on February 12, 2007, revealed a 3mm posterior disc protrusion at C5-6 associated with disc desiccation, and disc desiccation at C3-4, C4-5 and C6-7 without posterior disc protrusion.  AR 584.

Plaintiff saw Dr. Greenspan on March 30, 2007.  Left carpal tunnel surgery was approved and scheduled for May 2, 2007.  He was awaiting authorization for the right hand.  AR 591.

*Evidence Submitted to Appeals Council*

On June 15, 2007, Plaintiff saw Dr. Greenspan for a post operative visit.  She reported pain in both shoulders and hands, left more than right and decreased numbness in the left hand.

---

[5] Although Dr. Bhangoo indicated that Plaintiff had severe postural restrictions when he first completed the form, he later corrected his opinion when the ALJ requested further explanation.  AR 578-579.

1    Plaintiff fell on June 13, 2007, and re-injured her left wrist and hand.  Dr. Greenspan referred

2    Plaintiff for a supervised course of physical therapy, two times a week for four weeks, to

3    rehabilitate her left hand.  AR 611-612.

4         Plaintiff returned to Dr. Brourman on June 20, 2007.  She complained of increasing pain

5    in her right elbow and shoulders, as well as pain in her hands, neck and elbows.  On examination,

6    impingement signs were positive in her shoulders and she had generalized tenderness of the right

7    elbow.  She also had tenderness along the dorsum and volar aspects of both wrists.  He diagnosed

8    status post re-do right carpal tunnel release, status post left carpal tunnel release, bilateral

9    shoulder impingement syndrome and bilateral lateral epicondylitis of the elbows.   Dr. Brourman

10   ordered additional diagnostic studies.  AR 602-610.

11        On July 2, 2007, Dr. Greenspan answered an inquiry from ALJ Haubner.  He stated that

12   Plaintiff underwent a left carpal tunnel release on May 7, 2007.  At the time of his most recent

13   evaluation on June 15, 2007, Plaintiff was improved but was still recovering and undergoing

14   post-surgical rehabilitation.  Dr. Greenspan opined that her limitations "at this point" included no

15   forceful activities with the bilateral upper extremities, which included lifting, pushing, pulling,

16   grasping, pinching, holding torquing and performing other activities of comparable physical

17   effort.  AR 597-598.

18        ALJ's Findings

19        The ALJ found that Plaintiff had the severe impairments of a "history of bilateral nerve

20   entrapment (right elbow), status post right carpal tunnel release in May 2003, mild cervical disc

21   desiccation and small C5-6 protrusion."  AR 51-52.  Despite these impairments, Plaintiff retained

22   the residual functional capacity ("RFC"), from November 21, 2002, through May 14, 2004, to lift

23   and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk six hours in an eight

24   hour day, with limited ability to push or pull constantly with the bilateral upper extremities.

25   Plaintiff also had to avoid climbing ladders, ropes or scaffolds, constant gripping, grasping or

26   twisting with the bilateral upper extremities and pinching, plucking or keyboarding.  As of May

27   15, 2004, Plaintiff retained the RFC to perform all work activity except very heavy lifting and

28   repetitive work at or above shoulder level.  AR 52.

With this RFC and based on the testimony of the VE, the ALJ determined that Plaintiff could perform her past relevant work as an accounting assistant or medical assistant.  AR 54.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[6]  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (history of bilateral nerve entrapment (right elbow), status post right carpal tunnel release in May 2003, mild cervical disc desiccation and small C5-6 protrusion.) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) could perform her past relevant work.  AR 51-55

Here, Plaintiff argues that the ALJ failed to properly consider the opinion of Dr. Brourman in formulating her RFC.

**DISCUSSION**

Plaintiff argues that the ALJ misunderstood Dr. Brourman's limitations because they were set forth in workers' compensation "terms of art" and needed translation to language that would be useful in the Social Security context.   The ALJ adopted Dr. Brourman's opinion that Plaintiff could not perform "very heavy lifting" with "repetitive" activity above shoulder level to formulate her RFC after May 14, 2004.  AR 52.  Plaintiff argues that these terms, however, are more limiting in the workers' compensation context in which they were used and should have resulted in a more restrictive RFC.

Plaintiff's argument is based on her belief that the ALJ had an "unfettered obligation" to translate the workers' compensation terms into terms useful to the Social Security analysis.  She explains that when used in the workers' compensation context, "very heavy lifting" means a 25 percent loss in pre-injury capacity and "repetitive" means a 50 percent loss in pre-injury capacity.  Given this loss in pre-injury capacity, which is determined by examining the past work activity,

---

[6]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

Plaintiff contends that the ALJ's finding that Plaintiff could perform her past relevant work is inherently incorrect.

As a threshold issue, Plaintiff's contention that the ALJ had an obligation to translate the terms is unfounded.  Plaintiff cites *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) in support of her argument that such a translation is required, but Desrosiers explains that an ALJ erred when he failed to acknowledge the distinction between the measurements of categories in the workers' compensation scheme and those in the Social Security analysis.  There, the ALJ made an affirmative mistake when he stated that "heavy lifting is considered to be above fifty pounds." *Id.*

In fact, this Court recently decided this issue, explaining:

> To support this assertion, Plaintiff relies on *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  *Desrosiers* does not require an ALJ to "translate" worker's compensation terminology.  In *Desrosiers*, the court found error where an ALJ failed to recognize that the categories of work under the Social Security scheme are "measured quite differently" from the worker's compensation scheme.  *Id.* at 576.  While Social Security categories "are differentiated primarily by step increases in lifting capacities," worker's compensation categories are not based on strength, but on whether a person sits, stands or walks for most of the day.  *Id.*  The ALJ in *Desrosiers* improperly equated the worker's compensation preclusion from heavy **work** with a preclusion from heavy **lifting**.  *Id.* (emphasis added).

*Cruz v. Astrue*, 2010 WL 582109, *7 (E.D.Cal. 2010).

As in *Cruz*, there is no indication here that the ALJ failed to recognize that a distinction exists between the workers' compensation scheme and the Social Security scheme.  The workers' compensation doctors in *Desrosiers* precluded the claimant from "heavy work," a limitation which the ALJ incorrectly interpreted as a limitation from "any heavy lifting. . . considered to be above fifty pounds." *Desrosiers*, 846 F.2d at 576.  Here, however, Dr. Brourman stated his limitations in terms of lifting capabilities in the first instance, and since the Social Security categories are based on lifting capabilities, ALJ Haubner did not make an improper leap as the ALJ did in *Derosiers*.  As Defendant argues, "there is no mystery" as to the meaning of "very heavy lifting" or "repetitive" work.  Opposition, at 7.

Moreover, the disability ratings of the California Workers' Compensation system are not conclusive in a Social Security case.  *Macri v. Chater*, 93 F.3d 540, 543-544 (9th Cir. 1996).

Nonetheless, an ALJ may not ignore a doctor's medical opinion merely because it was issued in the context of a workers' compensation action.  *See eg.*, *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995); *Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002).  The ALJ must evaluate the medical evidence "couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion."  *Booth*, 181 F.Supp.2d at 1105.  While the ALJ's decision need not contain an explicit "translation," it should at least indicate that the ALJ recognized the differences and took those differences into account in evaluating the medical evidence.  *Booth*, 181 F.Supp.2d at 1106.

In discussing Dr. Brourman's opinion, the ALJ noted that he examined Plaintiff as an Workers' Compensation Agreed Medical Examiner.  AR 54.  In formulating the RFC for the period after May 15, 2004, the ALJ stated that Dr. Brourman precluded "very heavy lifting, or repetitive at or above shoulder work."  AR 54.  As noted above, however, since Dr. Brourman's limitations were already set forth in terms of lifting capacity, which is the same classification scheme used in Social Security, there wasn't much to "translate."

Dr. Brourman's opinion was also supported by other evidence demonstrating that Plaintiff had a less restrictive RFC after May 15, 2004.  After examining the evidence, the ALJ determined that Plaintiff's condition improved after her surgery.  He noted that in 2006, Dr. Bhangoo reported that nerve conduction studies performed in 2004 showed "complete resolution" of the nerve conduction problems. AR 53, 401-405, 565.  Dr. Bhangoo also determined that Plaintiff had no lifting, carrying, standing, walking or sitting restrictions.  She also had no pushing, pulling or manipulative restrictions, and could frequently climb, balance, kneel, crouch, crawl and stoop.  AR 53, 567-570, 579.  The ALJ also noted that a June 2006 MRI of Plaintiff's shoulders was normal.  AR 54, 535.

Plaintiff does not challenge the ALJ's treatment of the evidence on any other ground, nor does she challenge his adverse credibility finding.  In any event, the courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone.  *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The

1 Court must uphold the ALJ's decision where the evidence is susceptible to more than one

2 rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

3       The ALJ's treatment of Dr. Brourman's opinions was supported by substantial evidence

4 and was free of legal error.

5                                                  **CONCLUSION**

6       Based on the foregoing, the Court finds that the ALJ's decision is supported by

7 substantial evidence in the record as a whole and is based on proper legal standards.

8 Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

9 Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

10 favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

11 Maria Mejia-Raigoza.

12

13

14       IT IS SO ORDERED.

15       **Dated:**   **May 2, 2010**            _____/s/ **Dennis L. Beck**_____
                                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28